UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| TRUSTIVO, LLC | ) |
| | ) |
| PLAINTIFF | ) |
| | )   DOCKET NO. |
| v. | ) |
| | ) |
| INTEGRATED BEHAVIORAL | ) |
| HEALTH INC. d/b/a INTEGRTED | ) |
| BEHAVIORAL HEALTH | ) |
| CORPORATION | ) |
| | ) |
| and | ) |
| RELIANT BEHAVORIAL | ) |
| HEALTH, LLC d/b/a RELIANT | ) |
| BEHAVIORAL HEALTH | ) |
| CORPORATION | ) |
| | ) |
| DEFENDANTS | ) |

## COMPLAINT

### THE PARTIES

1.     The plaintiff TRUSTIVO, LLC ("TRUSTIVO") is a Delaware limited liability company with a principal place of business at 245 First Street Riverview II, Suite 1800, Cambridge, Massachusetts. TRUSTIVO is a Massachusetts based early-stage company engaged in the business of providing comprehensive Employee Financial Health Services for the benefit of individuals and their families through a national provider referral network of qualified independent financial advisors, over-the-phone financial counselors, as well as online financial resources.

2.     The defendant Integrated Behavioral Health, Inc. d/b/a Integrated Behavioral Health Corporation ("IBH") is upon information and belief a California corporation with a principal place located at 3070 Bristol Street, No. 350, Costa Mesa, California.  IBH is engaged in the business of providing a full-range of behavioral health, psychiatric disability, employee assistance programs ("EAP's"), and Work Life Services. According to its website, IBH provides these services nationally, and IBH represented to TRUSTIVO that its existing clients include 23,000 employers and 5.5 million EAP members.  IBH offers its services to hundreds of employers in Massachusetts and to tens of thousands individuals (and their families) in Massachusetts.

1

3.     The defendant Reliant Behavioral Health, LLC d/b/a Reliant Behavioral Health Corporation ("RBH") is upon information an Oregon corporation with a principal place located at 1220 SW Morrison, Suite 600, and Portland, Oregon.  Upon information and belief, at all times relevant hereto, RBH maintained an office in Massachusetts. RBH is a wholly-owned subsidiary of IBH, and is in the business of providing a full-range of behavioral health and EAP and Work Life Services, including to potentially thousands of EAP members in Massachusetts.

## Subject Matter Jurisdiction

4.     The Court has subject matter jurisdiction over this action under 28 U.S.C. §1332 in that the citizenship of the plaintiff and all defendants is diverse, and the amount in controversy exceeds $75,000.

## Jurisdiction and Venue

5.     The court has personal jurisdiction over the defendant pursuant to the Massachusetts Long-Arm State, G. L. c. 223A, §3(a)-(b), in that the plaintiff's claims arise out of the defendant's transacting business in the Commonwealth of Massachusetts, the defendant's contracting to provide services or things in the Commonwealth.

6.     IBH and RBH regularly do or solicit business, and engage in other persistent course of conduct, and derive substantial revenue from goods used or consumed or services rendered in the Commonwealth of Massachusetts.

7.     The court also has general jurisdiction over IBH and RBH because both IBH and RBH have a purposeful, substantial, continuous and systematic presence in the Commonwealth.

8.     Venue is proper in this court pursuant to 28 U.S.C.§1391 (b)(2), (b)(3) and (c)(2) because the plaintiff maintains its principal place of business in Cambridge, Massachusetts and a substantial part of the events or omissions giving rise to the plaintiff's claim occurred in the district, and because the defendants' residency for venue purposes includes any venue in which they are subject to the personal jurisdiction of the court, and there is no district in which the action may otherwise be brought.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### TRUSTIVO's business

9.     TRUSTIVO's Employee Financial Health Services (the "Service") fall into two distinct categories:

      a.     *"Financial Planning"*, which includes Retirement, General Financial Planning, College and Education, Investments, Taxes, Estate and Wills, Protection/Insurance, Employee Benefits, and Special Circumstances, etc.

This service is offered mainly through *"in-person"* consultations with independent certified financial planners which are regulated by the Financial Industry Regulatory Authority (FINRA) and the Securities and Exchange Commission (SEC);

b. *"Financial Counseling"*, which includes Budget and Money Counseling, Debt Management, Credit Report Review Student Loan Counseling, Foreclosure Prevention, Reverse Mortgage Counseling, Pre-Purchasing Housing Counseling, Bankruptcy Counseling, Financial Hardships. This service is offered *"telephonically"* through third-party financial counselors.

## THE PARTIES' CONTRACTUAL AGREEMENTS

### The Initial Agreement between TRUSTIVO AND IBH

10.     On or about November 14, 2013, TRUSTIVO and IBH entered into a written contract, dated as of November 1, 2013 (the "Initial Agreement").  A true and accurate copy of the Initial Agreement is attached hereto as Ex. 1 and incorporated by reference.

11.     Under the Initial Agreement, which specified a five (5) year term, IBH agreed to several obligations, including (a) to introduce and offer the TRUSTIVO service (which at that time included in-person "Financial Planning" but not over-the-phone "Financial Counseling") to all of its existing customers, including 23,000 employers and 5.5 million individual employees, within thirty (30) days of the "Program Start Date" of January 1, 2014, (b) to introduce TRUSTIVO to all future customers, (c) to promote and market TRUSTIVO's services and provide communication materials for the services as part of its regular EAP communications with its members, (d) to provide TRUSTIVO with member specific data needed for the services, in the form of secure electronic files (e) to cooperate and support TRUSTIVO with any PR and marketing efforts such as press releases, and (f) to work jointly with TRUSTIVO to implement an "adoption rate monitoring mechanism."

12.     For its part, TRUSTIVO agreed (a) to cooperate with IBH in the customer roll-out process and to provide support and content for communication materials, (b) to provide any other service-related content needed by IBH, and (c) to provide access to its national network of independent financial planners.

13.     Under the terms of the Initial Agreement, TRUSTIVO's in-person "Financial Planning" services were to be provided at no cost to IBH clients.  The revenue to be derived by TRUSTIVO under the Initial Agreement was intended to come from the "financial advisor fees" that would be earned for each IBH EAP member who requested a referral to a financial advisor for the purpose of in-person "Financial Planning".

14.     As part of this structure, the Initial Agreement provided for a "revenue sharing" program whereby TRUSTIVO would be entitled to receive ninety-five percent (95%) of the financial advisor connection request fee of $175 (*i.e.*, the fee to be received directly from the financial advisor) for any member of IBH's EAP who made a request to be connected to a financial advisor for the purposes of in-person "Financial Planning", while IBH would be entitled to receive the other five percent (5%).

15.     For each request from an IBH EAP member for in-person "Financial Planning", TRUSTIVO would have introduced the member to three (3) financial advisors in its network, such that the total fee for each requesting EAP member would be five-hundred and twenty-five dollars ($525).

16.     The total amount of fees to be earned by TRUSTIVO and IBH under the program would have, of course, been a function of the service "adoption" rate for each IBH EAP member with whom TRUSTIVO was introduced by IBH. Assuming only a 25% member adoption rate, along with the TRUSTIVO's entitlement to 95% of the financial advisor request fee of $525, the total revenue that would have been earned if introduced to the agreed upon 5.5 million IBH EAP members that IBH had when the contract was executed, would have been $721,875,000, of which TRUSTIVO's share would have been $675,781,250.   TRUSTIVO would have earned even further revenues based on requests for in-person "Financial Planning" services from any IBH "future" members**.**

17.     The IBH clients to whom IBH was required to introduce TRUSTIVO, and from whom IBH would derive "revenue sharing" income under the Initial Agreement, included numerous employers in Massachusetts and tens of thousands of individual EAP members. IBH, moreover, currently derives substantial revenue by offering EAP services to employers and employees in Massachusetts.

## THE TWO ADDENDA TO THE INITIAL AGREEMENT

### The IBH Addendum

18.     After TRUSTIVO and IBH entered into the Initial Agreement, TRUSTIVO expanded its services to include "Financial Counseling" provided over the telephone, as distinct from the in-person "Financial Planning" services that were to be provided under the Initial Agreement.

19.     Sometime during the summer or early fall of 2014, IBH and TRUSTIVO discussed the possibility of expanding the relationship between the parties to include a TRUSTIVO's new over-the-phone "Financial Counseling" service. IBH communicated to TRUSTIVO that IBH's existing vendor for such services, CLC, Inc. ("CLC"), had significant shortcomings and limitations compared to TRUSTIVO: for example, CLC had 30-day time limits on the services to individuals, and did not offer "in-person Financial Planning" services. Furthermore IBH informed TRUSTIVO that CLC was having service problems, and intended to raise its rates to IBH.

20.     As a result of these discussions, on or about July 24, 2014, TRUSTIVO and IBH executed Addendum to the Agreement ("IBH Addendum"), dated as of August 1, 2014 in order to expand the range of services to IBH EAP members. (A true and accurate copy of the Addendum is attached hereto as Exhibit 2 and incorporated by reference.)

21.     In the IBH Addendum, the parties agreed that all of the existing terms of the Initial Agreement were incorporated into the Addendum, but added to the new enhanced telephonic services that TRUSTIVO would also provide. Specifically, IBH agreed to offer all of its existing and future EAP members a TRUSTIVO "Financial Counseling" service for the purposes of providing individuals and their families with access to a full range of personalized financial counseling over the telephone, and to launch the TRUSTIVO over-the-phone "Financial Counseling" service on August 1, 2014.

22.     Prior to the execution of the IBH Addendum, IBH's EAP management provided data, estimates and other relevant information to TRUSTIVO so that a price for this service could be constructed. Thereby, in the IBH Addendum, IBH agreed that it would pay TRUSTIVO twenty dollars ($20) for each member referred, *i.e.*, "transferred" to TRUSTIVO for the over-the-phone Financial Counseling services through a "warm transfer process," *i.e.*, the telephonic transfer of a member's initial call from IBH's call center to TRUSTIVO's call center.

23.     For its part, TRUSTIVO agreed, in addition to providing the over-the-phone "Financial Counseling" service, (a) to facilitate a "warm transfer process" to ensure that IBH EAP members would transferred to the appropriate financial counselors either immediately or later if requested by the member, (b) to train any IBH EAP associates as requested by IBH, (c) to provide monthly service usage reporting as directed by IBH, (d) to provide monthly billing, and (e) to work with IBH to monitor operational performance levels for the telephonic service.

24.     The EAP members to whom IBH was required to offer the TRUSTIVO over-the-phone Financial Counseling service included tens of thousands of members who resided in and worked in Massachusetts for Massachusetts businesses. IBH, moreover, derives substantial revenue by offering EAP services to employers and employees in Massachusetts.

## The RBH Addendum

25.     Based on its satisfaction with TRUSTIVO's service for several months, in or around the fall of 2014, IBH approached TRUSTIVO and indicated that its newly acquired and wholly-owned subsidiary, RBH (which provides services similar to those of IBH), was experiencing the same kinds of issues with its current vendor, CLC that IBH had before its move to TRUSTIVO. After a series of presentations and discussions with RBH leadership, RBH requested for TRUSTIVO to provide its Employee Financial Health services for the benefit of its members and execute a contract similar to IBH, its parent company.

26.     As a result, on November 4, 2014, TRUSTIVO and RBH executed a further addendum to the Initial Agreement between IBH and RBH entitled "Addendum to Agreement" (the "RBH Addendum"), dated as of November 1, 2014. (A true and accurate copy of the RBH Addendum is attached hereto and incorporated by reference as Ex. 3.).

27.     As requested by its parent company IBH, the RBH Addendum is substantially identical to the IBH Addendum. The RBH Addendum provides that all terms of the Initial Agreement between IBH and TRUSTIVO are incorporated into the RBH Addendum. RBH agreed, "in addition to its other duties under the Initial Agreement," to offer TRUSTIVO's "Financial Counseling" services to all of RBH's existing and future EAP members, with a "service launch date" of December 1, 2014.

28.     Thus, like the IBH Addendum, the RBH Addendum obligated RBH to introduce *all of* TRUSTIVO's services, including the in-person "Financial Planning" services *and* the over-the-phone "Financial Counseling" services, to all of its existing and future members.

29.     All of the other terms and conditions of the RBH Addendum, including the requirement that RBH pay TRUSTIVO $20 for each member referred to TRUSTIVO through the "warm transfer process" for over-the-phone "Financial Counseling" services and TRUSTIVO's obligations with respect to providing the service, are identical to those in the IBH Addendum.

30.     The EAP members to whom RBH was required to offer the TRUSTIVO over-the-phone "Financial Counseling" service and in-person "Financial Planning" includes all of its nationally located individual members (and their families) and those members that reside in and work in Massachusetts for Massachusetts businesses.  RBH, moreover, has an office in Massachusetts and derives substantial revenue by offering EAP services to employers and employees in Massachusetts.

## THE REVENUES TO BE EARNED UNDER THE IBH ADDENDUM AND THE RBG ADDENDUM

31.     Although TRUSTIVO does not currently know the exact number of IBH or RBH EAP members who requested financial services such as "Financial Counseling" Services, and does not currently know how many such referrals (*i.e.,* transfers) would have been made if TRUSTIVO had been introduced to all of IBH's and RBH's existing EAP members required by the Initial Agreement, TRUSTIVO, IBH, and RBH expected at the time that the Addenda were entered into that the number of EAP members who would request such services would be from 100-150 per month for IBH, and 25-35 per month for RBH.  This estimate was provided by both IBH and RBH's EAP management team to TRUSTIVO based on IBH's and RBH's experience for several years with its previous vendor CLC.

32.     Further, at the time of the execution of the IBH Addendum and the RBH Addendum, it was anticipated by the parties that a significant percentage of members who requested financial services such as over-the-phone "Financial Counseling" services would also request a referral for TRUSTIVO's in-person "Financial Planning" services under the Initial Agreement, and that the parties would derive additional revenue based on the total financial advisor connection request fee of $525. Given a stated actual need for Financial Health services of these members that would directly call asking for support, actual data shows that a majority of these members, *e.g.* seventy-four percent (74%) of the IBH members for the month end of October 2014, would also want to use the in-person "Financial Planning" service.

## IBH AND RBH'S BREACHES OF CONTRACT

33.     After the parties entered into the Initial Agreement, the IBH Addendum, and the RBH Addendum, TRUSTIVO was ready, willing, and able to fulfill, and did in fact fulfill, its obligations under the Agreements. Not only did TRUSTIVO fulfill its obligations under the agreements, but IBH was so satisfied with all the TRUSTIVO services, that it asked TRUSTIVO to: (a) expanded its services to all of its members in August, and (b) referred TRUSTIVO to its wholly-owned subsidiary RBH for the same purpose in the fall of 2014.

34.     Despite TRUSTIVO'S performance of its obligations under the Agreements, both IBH and RBH have materially breached, and expressly communicated that they intend to continue materially breaching, their obligations under the respective agreements between the parties.

35.     IBH has materially breached its obligation under the Initial Agreement to introduce TRUSTIVO to all of IBH's 5.5 million existing EAP members by January 30, 2014 (*i.e*, within thirty days of the program start date of January 1, 2014), has failed to introduce TRUSTIVO to any meaningful percentage of those 5.5 million members, and has communicated to TRUSTIVO that it does not intend to do further business with TRUSTIVO.  RBH has similarly breached its obligation to introduce the TRUSTIVO services to all of its existing EAP members.

36.     Further, although both IBH and RBH did, for a short period after the execution of the two Addenda, transfer some members who requested over-the-phone "Financial Counseling" services to TRUSTIVO, IBH stopped transferring its members to TRUSTIVO on or about February 5, 2015, while RBH stopped transferring any members on or about January 20, 2015.  Both IBH and RBH have also informed TRUSTIVO in writing that IBH and RBH have a right to transfer their members to the prior vendor, CLC, *instead of* TRUSTIVO, even though CLC's services are limited in scope, and upon information and belief, IBH and RBH have done just that.

37.     As required in the Agreements, TRUSTIVO has provided written notices on March 25, 2014 to both IBH and RBH of their breaches and provided an opportunity to cure these breaches within 30 days. However, both IBH and RBH have failed to cure the

breaches and provided written confirmation that they will not intend to do so in the future.

## COUNT 1
### Breach of Contract (Initial Agreement) v. IBH and RBH

38.     TRUSTIVO repeats and realleges all prior agreements as if set forth fully herein.

39.     IBH's and RBH's actions in failing to introduce TRUSTIVO for the purposes of "Financial Planning", to all of their *existing and future* EAP members as required by the Initial Agreement and communicating to TRUSTIVO that they no longer intend to do business with TRUSTIVO constitutes an actual material and anticipatory breach of the Initial Agreement.

40.     TRUSTIVO has suffered and will continue to suffer substantial damages as a result of the breaches.

## COUNT 2
### Breach of Contract (IBH Addendum) v. IBH

41.     TRUSTIVO repeats and realleges all prior agreements as if set forth fully herein.

42.     IBH's actions in stopping the transfer to TRUSTIVO of *existing and future* IBH members who have financial support needs (both "Financial Planning" AND "Financial Counseling"), and communicating to TRUSTIVO that IBH has a right to refer its members to CLC, its prior vendor, *instead of* TRUSTIVO, constitutes an actual material and anticipatory breach of the IBH Addendum.

43.     TRUSTIVO has suffered and will continue to suffer substantial damages as a result of the breach of contract.

## COUNT 3
### Breach of Contract (RBH Addendum) v. RBH

44.     TRUSTIVO repeats and realleges all prior agreements as if set forth fully herein.

45.     RBH's actions in stopping transfers to TRUSTIVO of *existing and future* RBH members who have financial support needs (both "Financial Planning" AND "Financial Counseling"), and communicating to TRUSTIVO that RBH has a right to refer its members to CLC, the prior vendor, *instead of* TRUSTIVO, constitutes an actual material and anticipatory breach of the RBH Addendum.

46.     TRUSTIVO has suffered and will continue to suffer substantial damages as a result of the breach of contract.

## COUNT 4
### Breach of Covenant of Good Faith and Fair Dealing v. IBH and RBH

47.     TRUSTIVO repeats and realleges all prior agreements as if set forth fully herein.

48.     Under Massachusetts law, every contract contains an implied covenant of good faith and fair dealing.

49.     IBH's and RBH's actions as described above, were intended to and did deprive TRUSTIVO of the expected fruits of the Initial Agreement, the IBH Addendum, and the RBH Addendum, and constituted a breach of the covenant of good faith and fair dealing implied in those agreements.

50.     TRUSTIVO has suffered and will continue to suffer substantial damages as a result of the breach of the covenant of good faith and fair dealing

WHEREFORE, the plaintiff TRUSTIVO, LLC respectfully requests that the court

1.     Enter judgment on Count 1 in favor of TRUSTIVO, LLC against the defendant Integrated Behavioral Health, Inc. d/b/a Integrated Behavioral Health Corporation and against defendant Reliant Behavioral Health, LLC d//b/a Reliant Behavioral Health Corporation, in an amount to be determined by the Court, together with interest, costs, and attorney fees;

2.     Enter judgment on Count 2 in favor of TRUSTIVO, LLC against the defendant Integrated Behavioral Health,  Inc. d//b/a Integrated Behavioral Health Corporation, in an amount to be determined by the Court, together with interest, costs, and attorney fees

3.     Enter judgment on Counts 3 in favor of TRUSTIVO, LLC against the defendant Reliant Behavioral Health, LLC d//b/a Reliant Behavioral Health Corporation, in an amount to be determined by the Court, together with interest, costs, and attorney fees;

4.     Grant such other relief as may be just, equitable, and proper.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS AND ISSUES
THAT ARE SO TRIABLE

TRUSTIVO LLC,

BY ITS COUNSEL,


/s/  Timothy M. Hughes
Timothy M. Hughes, BBO#548708
Attorney at Law
6 Old County Road, Suite 9
Sudbury, MA 01776
978-443-4460
hugheslaw1@verizon.net

DATED:  March 30, 2015