# EXHIBIT 1

AGREEMENT

THIS AGREEMENT, hereinafter called the "Agreement", dated the 1st day of November, 2013 ("Effective Date"), by and between TRUSTIVO with offices located at 245 First Street Riverview II, 18th Floor Cambridge, Massachusetts 02142 and Integrated Behavioral Health Corporation ("IBH") with offices located at 3070 Bristol St #350, Costa Mesa, CA 92626.

WHEREAS, TRUSTIVO LLC is engaged in the business of providing Work-Life Financial Wellness services for employers and their employees;

WHEREAS, Integrated Behavioral Health Corporation ("IBH") is engaged in the business of providing a full-range of behavioral health, psychiatric disability, EAP and Work Life services;

WHEREAS, IBH and TRUSTIVO desire to offer to existing and future customers of IBH a new Employee Assistance Program (EAP) Financial Wellness service provided by TRUSTIVO (the "SERVICE"), for the purposes of providing employees with access to financial advisors, online financial tools and resources, and supporting them with the construction of personal strategies for life long financial wellness;

NOW, THEREFORE, in consideration of the mutual promises, covenants, and agreements made and contained herein, and intending to be legally bound hereby, the Parties hereto agree as follows:

1. <u>DEFINITIONS</u>. When used herein with initial capitalizations, whether in the singular or in the plural, the following terms shall have the following meanings:

"Confidential Information" shall mean any and all technical and non-technical information, including trade secrets, know-how and proprietary information, firmware, designs, schematics, techniques, plans or any other information relating to any research project, work in process, future development, scientific, engineering, manufacturing, marketing or business plans or financial or personnel matters relating to either party or its present or future products, sales, suppliers, customers, employees, investors or Affiliates and disclosed or otherwise supplied in confidence by either party to the other party, acquired in the course of carrying out the tasks hereunder or as a result of access to the premises of a party (including in the context of a request for information or request for proposal, or related to discussions between the parties in anticipation of potential statements of work). Confidential Information includes: (i) information disclosed in a written or other tangible form which is clearly marked with a "confidential" or "proprietary" legend or other comparable legend; (ii) information disclosed orally or visually which is identified as confidential at the time of disclosure and confirmed in writing within a reasonable time; and (iii) any other information which a reasonable person would deem confidential under the context of disclosure or due to the nature of the information. Confidential Information may include, without limitation, lists of, or other information relating to and identified with

Exhibit 1

customers, former or prospective customers or applicants, business volumes or usage, financial information, pricing information, information related to mergers or acquisitions, security procedures, information concerning business plans or business strategy, patent, copyright, trade secret, and other proprietary information, Software and Software Documentation, data, inventions, know-how, processes, information related to the party's current, future, and proposed products and services, and the subject matter of this Agreement.

"Current Customer" shall be the current customer base of IBH and it is estimated to be composed of approximately 5.5 million individual members and 23,000 employers.

"Future Customer" shall mean all other future IBH clients, their respective employers and individual employees either sourced directly by IBH or through their relationship with other business partners such as Guardian Life.

"Program Start Date" shall mean January 1, 2014.

2. DUTIES OF IBH.  In addition to its other duties hereunder, IBH shall perform the duties set forth in this Paragraph.

(A) Service Launch Planning. IBH will work with TRUSTIVO to plan for the Program Start Date within 5-10 business days of the Effective Date and it will assign resource(s) as required for this purpose.

(B) Current Customer Rollout. IBH hereby agrees that it will introduce the TRUSTIVO platform to its current customers within 30 days of the Program Start date. IBH will promote and market the Service and provide any communication materials for the Service as part of its regular EAP communication processes to its members. Furthermore, IBH will provide TRUSTIVO with member specific data needed for the SERVICE through use of secure files such as CSV, etc. IBH will cooperate and support TRUSTIVO with any PR and marketing efforts including but not limited to press releases, and other communications consistent with IBH client trademark or service mark requirements .

(C) Future Customer Rollouts.  IBH hereby agrees that it will introduce the TRUSTIVO SERVICE as part of its regular EAP service offerings to all future customers immediately upon sign up for IBH services. IBH will provide to TRUSTIVO with member specific data needed for the SERVICE through means identified above.

(D) Ongoing Monitoring. IBH will implement jointly with TRUSTIVO a periodic (monthly) service adoption rate monitoring mechanism and will also jointly manage on any follow up activities designed to promote participation in the SERVICE.

Exhibit 1

(E) <u>Compliance with Applicable Laws and Agreements.</u> In performing its duties hereunder, IBH shall comply with all applicable federal and state laws and regulations.

3. <u>DUTIES OF TRUSTIVO.</u> In addition to its other duties hereunder, TRUSTIVO shall perform the duties set forth in this Paragraph.

(A) <u>Service Launch Planning.</u> IBH will work with TRUSTIVO to plan for the Program Start Date within 5-10 business days of the Effective Date and it will assign resource(s) as required for this purpose.

(B) <u>Customer Rollout.</u> TRUSTIVO shall fully cooperate with IBH in the customer roll out process and will provide support and content for any of the communication materials needed by IBH for communication/promotion of the SERVICE to its customers. Any information prepared by TRUSTIVO and provided to IBH shall be used by IBH for the sole purpose of performing its obligations hereunder, and IBH shall have no ownership interest therein. TRUSTIVO will provide any other SERVICE related content needed by IBH for the purpose of the planning, implementation and/or rollout. TRUSTIVO may promote the SERVICE and its relationship with IBH through press releases and other open communication means.

(C) <u>Service.</u> TRUSTIVO hereby agrees to provide its SERVICE to IBH for the benefit of both current and future customers.

(D) <u>National Network of Advisors.</u> Furthermore and as part of its platform, TRUSTIVO agrees to provide a national network of independent qualified and vetted financial planners and advisors. TRUSTIVO will vet professionals on its platform in an effort to provide credible and trusted professionals. Among other methods used are the advisor's background is checked against FINRA (Financial Industry Regulatory Authority) to determine licenses, experience, track records and complaints/events if any. The management of this national network of advisors will be the responsibility of TRUSTIVO. It is fully understood that TRUSTIVO does not either directly or indirectly employee any of the advisor on its platform.

(E) <u>Fees.</u> The TRUSTIVO SERVICE will be provided at no cost to IBH clients. Advisors may charge certain fees for their services to the individual employees, which will be fully disclosed to members prior to an engagement.

(F) <u>Revenue Sharing.</u> TRUSTIVO will provide IBH with a revenue share percentage of a certain fee collected as a result of the SERVICE. This revenue sharing shall be equal to five percent (5%) of the financial advisor connection request fee of one hundred and seventy five dollars ($175) made by any of member belonging to the IBH's EAP. Payments for this revenue sharing agreement will be made by TRUSTIVO to the IBH on a quarterly basis. It is understood by all parties that the decision for pricing of the SERVICE rests exclusively with TRUSTIVO. Any future change in the SERVICE price with respect to

Exhibit 1

the above fee will be communicated to IBH and will be prorated as to the same percentage established above in this agreement. This revenue sharing percentage shall not change.

(F) <u>Ongoing Monitoring.</u> TRUSTIVO will implement with IBH a periodic (monthly) service adoption rate monitoring mechanism and will jointly manage on any follow up activities designed to promote the SERVICE.

(G) <u>Compliance with Applicable Laws and Agreements.</u> In performing its duties hereunder, TRUSTIVO shall comply with all applicable federal and state laws and regulations. TRUSTIVO furthermore stipulates that it is not a registered investment advisor as defined in the Investment Act of 1940.

4.     CONTACT PERSON

Both parties agree to name a primary contact person for the program responsible for addressing issues as they may arise. They primary contacts are as follows:

For IBH the primary contact person will be:

> Andrea Mander
> Marketing & Corporate Administration
> Tel: (714) 442-2223
> andrea.mander@ibhcorp.com

For TRUSTIVO the primary contact person will be:

> James D. Stevens
> EVP Strategic Business Development
> Tel: (978) 683-7119
> jstevens@trustivo.com

5.     CONFIDENTIALITY

All business information disclosed by one party to the other in connection with this Agreement (the "Confidential Information") shall be treated as Confidential Information unless it is or later becomes publicly available through no fault of the other party or it was or later is rightfully developed or obtained by the other party from independent sources free from any duty of confidentiality. Each party's Confidential Information shall be held in strict confidence by the other party, using the standards generally accepted in the industry or the same standard of care as it uses to protect its own Confidential Information, whichever is greater, and shall not be used or disclosed by the other party for any purpose except as necessary to implement or perform this Agreement or except as required by law.

Exhibit 1

6.     INTELLECTUAL PROPERTY

Either party's IP owned either directly or indirectly will remain the property of the respective party and shall not be transferred in any way either directly or indirectly by any clause of this agreement.

7.     INDEMNIFICATION.

Each party agrees to indemnify, hold harmless, and defend the other party, and any employee or agent thereof (each of the foregoing being hereinafter referred to individually as the "Indemnified Party") against all liability, including reasonable attorneys' fees and costs, to third parties arising from all claims of intellectual property infringement arising from the Deliverables or Services provided hereunder. Each party's obligation to indemnify shall survive the expiration or termination of this Agreement by either party for any reason.

8.     TERM AND TERMINATION.

    (A) Term for Services. The term of this Agreement shall be for a period of five (5) years, commencing on the Effective Date; provided, however, that this Agreement shall thereupon automatically renew for successive 12-month periods until such time as either party notifies the other party in writing of its intention to terminate this Agreement.

    (B) Termination for Default. If there is a default of a material obligation by either party in the performance of any other term or condition of this Agreement, and such default shall continue for a period of thirty (30) days after such party's receipt of written notice from the other party specifying such default in reasonable detail, then the non-defaulting party may terminate this Agreement immediately upon written notice to the defaulting party.

9.     MISCELLANEOUS.

    (A) Non-Solicitation of Employees. During the term or extended term hereof and for a period of 12 months thereafter, neither party shall intentionally solicit for employment any personnel of the other party who has been directly associated with this Agreement. "Intentionally solicit" shall not include consideration of responses to advertising or job postings directed at the general public or of unsolicited resumes. The parties agree to inform their personnel of the terms of this section.

    (B) Authority. TRUSTIVO and IBH each represent to the other that the execution, delivery, and performance of this Agreement by such party have been duly approved by all necessary corporate action, and do not conflict with, or result in a material breach of, the articles of organization or by-laws of such party, any material agreement by which such party is bound, or any law, regulation, rule, judgment, or decree of any governmental instrumentality or court having jurisdiction over such

Exhibit 1

party. Each party further represents that this Agreement has been duly executed by such party and constitutes a valid and legally binding obligation of such party enforceable in accordance with its terms. No modification of this Agreement, and no waiver of any breach of this Agreement, shall be effective unless in writing and signed by an authorized representative of the party against whom enforcement is sought.

(C) <u>Force Majeure.</u>  In the event that either party is unable to perform any of its obligations under this Agreement, or to enjoy any of its benefits because of an event wholly beyond its control, including without limitation fire, natural disaster, and an action or decree of a governmental body (a "Force Majeure Event"), the party who has been so affected shall immediately give written notice to the other party and use reasonable efforts to resume performance. Upon receipt of such notice, performance of the affected obligations under this Agreement shall be temporarily suspended for the duration of the Force Majeure Event.  If the period of nonperformance exceeds thirty (30) days from the receipt of such notice, the party whose ability to perform has not been so affected may, by giving written notice, terminate this Agreement. A delay in delivery due to a Force Majeure Event shall automatically extend the delivery date for a period equal to the duration of such Force Majeure Event. Any warranty period affected by a Force Majeure Event shall likewise be extended for a period equal to the duration of such Force Majeure Event.  As applied to this section, and to determine whether an event is wholly beyond control of a party, strikes, slowdowns, or other labor related delays are not Force Majeure Events.

(D) <u>Severability, Waiver, Survival.</u> Any invalidity, in whole or in part, of any provision of this Agreement shall not affect the validity of any other of its provisions. No term or provision hereof shall be deemed waived and no breach excused unless such waiver or consent shall be in writing and signed by the party claimed to have waived or consented. Failure to exercise a right or remedy at law or granted hereunder shall not be deemed a waiver of such right or remedy.  Failure to claim default hereunder shall not waive any default. Termination of this Agreement shall not release either party from their respective obligations hereunder with regard to Deliverables or Services already delivered or performed, including, without limitation, obligations of payment, warranty, intellectual property rights, and from the confidentiality and indemnity provisions hereof.

(E) <u>Notices.</u>  All notices required or contemplated herein shall be sufficient and deemed delivered if in writing and deposited with the United States Postal Service, postage prepaid via certified mail, or sent via nationally recognized courier service with proof of delivery, addressed to the parties as set forth below, or to such other address as may be changed from time to time by notice duly given.

Exhibit 1

To:    INTEGRATED BEHAVIORAL HEALTH CORP.
3070 Bristol St #350
Costa Mesa, CA 92626.
Attention: Edward M. Bosanac, Dr.P.H.

To:    TRUSTIVO LLC
245 First Street Riverview II, 18th Floor
Boston, MA 02142
Attention: Duncan Mackay, COO

(F) Governing Law. This agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts excluding choice of law provided, however, that the terms of any applicable law now or hereafter enacted that is based on or similar to the uniform computer information transactions act drafted by the National Conference of Commissioners on Uniform State Laws shall not apply.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

INTEGRATED BEHAVIORAL HEALTH

By: _____

Name: Edward M. Bosanac Dr.P.H. ____

Title: Office of the President_____

Date: November 14, 2013_____

TRUSTIVO LLC

By: _____

Name: ____PASAVSCHI RAD___

Title: ____CEO____

Date: ____11 - 14 - 2013____

Exhibit 1