UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRUSTIVO, LLC ) | |
| ) | |
| PLAINTIFF ) | |
| ) | DOCKET NO. 1:15-CV-11470-IT |
| v. ) | |
| ) | |
| INTEGRATED BEHAVIORAL ) | |
| HEALTH INC. d/b/a INTEGRATED ) | |
| BEHAVIORAL HEALTH ) | |
| CORPORATION ) | |
| ) | |
| and ) | |
| RELIANT BEHAVIORAL ) | |
| HEALTH, LLC d/b/a RELIANT ) | |
| BEHAVIORAL HEALTH ) | |
| CORPORATION ) | |
| ) | |
| DEFENDANTS ) | |
| ) | |
| INTEGRATED BEHAVIORAL HEALTH, ) | |
| INC. and RELIANT BEHAVIORAL ) | |
| HEALTH, LLC ) | |
| ) | |
| PLAINTIFFS-IN-COUNTERCLAIM ) | |
| ) | |
| v. ) | |
| ) | |
| TRUSTIVO, LLC ) | |
| ) | |
| DEFENDANT-IN-COUNTERCLAIM ) | |

**TRUSTIVO LLC'S REQUEST FOR LEAVE TO SERVE MORE THAN TWENTY-FIVE INTERROGATORIES**

The plaintiff TRUSTIVO, LLC hereby requests leave to serve upon each of the defendants/counterclaim plaintiffs more than the twenty-five (25) interrogatories permitted by

Local Rule 16.1(c).  TRUSTIVO seeks leave to serve a total of forty (40) interrogatories on the defendant Integrated Behavioral Health, Inc. and a total of thirty (30) on the defendant Reliant Behavioral Health, LLC.

TRUSTIVO's complaint alleges multiple breaches of multiple agreements between the parties entitling it to hundreds of millions of dollars of damages, while IBH and RBH each allege a litany of claimed violations of the same agreements by TRUSTIVO.

TRUSTIVO therefore believes that more than 25 interrogatories are required to fully explore all of the issues raided by the complaint and the counterclaims, and will assist in the speedy and efficient resolution of the case.  In further support of this motion, TRUSTIVO states as follows:

## THE PARTIES' CONTRACTUAL RELATIONSHIP

The plaintiff TRUSTIVO is a provides comprehensive Employee Financial Health Services to individuals and their families through a national provider referral network of independent financial advisors, over-the-phone financial counselors, and online financial resources. The defendant Integrated Behavioral Health, Inc. ("IBH") engaged in the business of providing a full-range of behavioral health, psychiatric disability, employee assistance programs ("EAP's"), and Work Life Services.  The defendant Reliant Behavioral Health, LLC ("RBH") is in the business of providing a full-range of behavioral health and EAP and Work Life Services to tens of thousands of EAP members.

In 2013, TRUSTIVO and IBH entered into a written contract, referred to in the complaint as the Initial Agreement, under which IBH agreed, among other things, to introduce and offer the TRUSTIVO service (which at that time included in-person "Financial Planning" but not over-

the-phone "Financial Counseling") to all of IBH's existing customers, including 23,000 employers and 5.5 million individual employees, and to all of IBH's future customers.

For its part, TRUSTIVO agreed (a) to cooperate with IBH in the customer roll-out process and to provide support and content for communication materials, (b) to provide any other service-related content needed by IBH, and (c) to provide access to its national network of independent financial planners.

Under the terms of the Initial Agreement, TRUSTIVO's in-person "Financial Planning" services were to be provided at no cost to IBH clients. The revenue to be derived by TRUSTIVO under the Initial Agreement was intended to come from the "financial advisor fees" that would be earned for each IBH EAP member who requested a referral to a financial advisor for the purpose of in-person "Financial Planning."

As part of this structure, the Initial Agreement provided for a "revenue sharing" program whereby TRUSTIVO would be entitled to receive ninety-five percent (95%) of the financial advisor connection request fee to be received directly from the financial advisor) for any member of IBH's EAP who made a request to be connected to a financial advisor for the purposes of in-person "Financial Planning", while IBH would be entitled to receive the other five percent (5%).

Given the 5.5 million members that IBH claimed it had at the time the parties entered into the initial agreement, both TRUSTIVO and IBH stood to earn hundreds of millions of dollars in revenue.

After TRUSTIVO and IBH entered into the Initial Agreement, TRUSTIVO expanded its services to include "Financial Counseling" provided over the telephone, as distinct from the in-person "Financial Planning" services that were to be provided under the Initial Agreement.

Consequently, in July of 2014, TRUSTIVO and IBH executed Addendum to the Agreement ("IBH Addendum"), in order to expand the range of services to IBH EAP members.

In the IBH Addendum, the parties agreed that all of the existing terms of the Initial Agreement were incorporated into the Addendum, but added to the new enhanced telephonic services that TRUSTIVO would also provide. Specifically, IBH agreed to offer all of its existing and future EAP members a TRUSTIVO "Financial Counseling" service over the telephone, and to launch the TRUSTIVO over-the-phone "Financial Counseling" service in August of 2014.

Pursuant to the IBH Addendum, IBH agreed that it would pay TRUSTIVO twenty dollars ($20) for each member referred, *i.e.*, "transferred" to TRUSTIVO for the over-the-phone Financial Counseling services.

For its part, TRUSTIVO agreed, in addition to providing the over-the-phone "Financial Counseling" service, (a) to facilitate a "warm transfer process" to ensure that IBH EAP members would transferred to the appropriate financial counselors either immediately or later if requested by the member, (b) to train any IBH EAP associates as requested by IBH, (c) to provide monthly service usage reporting as directed by IBH, (d) to provide monthly billing, and (e) to work with IBH to monitor operational performance levels for the telephonic service.

Subsequently, based on IBH's apparent satisfaction with TRUSTIVO's service, IBH and TRUSTIVO agreed that IBH'S wholly-owned subsidiary Reliant Behavioral Health, LLC, would enter into a virtually identical "Addendum," and in November 2014, TRUSTIVO and RBH executed a further addendum to the Initial Agreement between IBH and RBH entitled "Addendum to Agreement" (the "RBH Addendum").

The RBH Addendum provides that all terms of the Initial Agreement between IBH and TRUSTIVO are incorporated into the RBH Addendum. RBH agreed, "in addition to its other duties under the Initial Agreement," to offer TRUSTIVO's "Financial Counseling" services to all of RBH's existing and future EAP members, and to pay $20 for each member referred to TRUSTIVO.

THE PARTIES' RESPECTIVE CLAIMS

TRUSTIVO's complaint alleges that IBH has materially breached its obligation under the Initial Agreement to introduce TRUSTIVO to all of IBH's 5.5 million existing EAP members by the date specified in the contract, failing to introduce TRUSTIVO to any meaningful percentage of those 5.5 million members, an communicating to TRUSTIVO that it does not intend to do further business with TRUSTIVO.  The complaint alleges that RBH has similarly breached its obligation to introduce the TRUSTIVO services to all of its existing EAP members.  The complaint further alleges that both IBH and RBH breached their respective Addenda by failing to refer (i.e., through the call transfer process) all members who requested over-the-phone "Financial Counseling" services to TRUSTIVO,  and abruptly stopped making any referrals in early 2015.  The complaint alleges that instead, both IBH and RBH have also informed TRUSTIVO in writing that IBH and RBH have a right to transfer their members to the prior vendor, CLC, Inc., *instead of* TRUSTIVO.

In its counterclaim, IBH alleges a litany of claims: (1) that TRUSTIVO breached it obligations under the Initial Agreement by (a) failing to provide IBH with appropriate material and content to enable to promote the services offered under the agreement, and (b) failing to pay to IBH all fees due under the revenue sharing agreement; and (2) that TRUSTIVO breached its

obligations under the IBH Addendum by (a) failing to correct service-related issues, including improper training of TRUSTIVO's call center operators, the failure to handle on a timely and adequate basis the referral of employees request financial counseling, and the failure to keep scheduled appointments with members, (b) failing to provide accurate monthly usage reports, (c) failing to correct discrepancies in monthly usage reports, (d) failing to provide appropriate materials to enable IBH to promote the available services, (e) failing to properly service the needs of referrals made by IBH, (f) failing to call back members, and (g) failing to make outgoing calls to members.

For its part, RBH alleges a similar litany of claims relating to TRUSTIVO's alleged breach of the RBH Addendum.

Although TRUSTIVO believes that all of the counterclaims are both legally and factually baseless, TRUSTIVO believes that more than 25 interrogatories are needed to permit the full exploration of the numerous factual allegations relating to the multiple agreements, the facts underlying the counterclaims, and TRUSTIVO's claims. Numerous commentators have recognized the importance of interrogatories in developing cases, particularly those involving corporations. *See, e.g.* M. Seiden, "Drafting Interrogatories," The Back Page, *New York Law Journal*, March 9, 2007[1] ("Surely not as glamorous as deposition practice, interrogatories nonetheless serve an important function in the discovery process. A well-crafted set of interrogatories served early in an action can require the opposing party to serve substantive responses that dramatically alter the balance of discovery, can result in a significant reduction in

---

[1] Available at http://www.jonesday.com/files/Publication/0bca3a2e-2090-42e8-99db-8f3c078ba435/Presentation/PublicationAttachment/0e344871-8d72-45ef-b823-8ff4f3ba70d0/MSeidenNYLJ_Draftinga.pdf

the time and expense ordinarily associated with discovery and can even impact a party's evaluation of its likelihood of success on the merits. Indeed, interrogatories can be a particularly valuable tool in an action against a corporation because they force the corporate party to come forward with its collective position as an entity.:), "The Effective Use of Written Interrogatories, A. Schoone and E. Miner, Vol. 60:29 *Marquette Law Review (*1976*)* at 30 ("In complex litigation interrogatories are often the only practical and efficient means of obtaining certain information. For example, although depositions are relatively effective for obtaining spontaneous answers, the information is restricted to the knowledge of the deposed individual. Answers to interrogatories, on the other hand, represent the collective knowledge of the opponent and his attorneys and agents.' Moreover, the answering party is required to conduct a reasonable is necessary in order to formulate an adequate response to the questions.")

TRUSTIVO also believes that the allowance of this motion may facilitate the speedy and efficient resolution of the case through summary judgment on all claims and/or settlement.

Wherefore TRUSTIVO LLC respectfully requests that this motion be allowed.

TRUSTIVO LLC,
BY ITS COUNSEL,

*/s/Timothy M. Hughes*
_____
Timothy M. Hughes, BBO#548708
Attorney at Law
6 Old County Road, Suite 9
Sudbury, MA 01776
978-443-4460
hugheslaw1@verizon.net

DATED:  7/16/15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of July, 2015, a copy of the foregoing electronically filed document was served on the parties listed below by first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Lee T. Gesmer
GESMER UPDEGROVE, LLP
40 Broad Street
Boston, MA 02110

/s/ *Timothy M. Hughes*

_____
Timothy M. Hughes