UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRUSTIVO, LLC )<br>)<br>PLAINTIFF )<br>)<br>v. )<br>)<br>INTEGRATED BEHAVIORAL )<br>HEALTH INC. d/b/a INTEGRATED )<br>BEHAVIORAL HEALTH )<br>INCORPORATED )<br>)<br>and )<br>RELIANT BEHAVIORAL )<br>HEALTH, LLC d/b/a RELIANT )<br>BEHAVIORAL HEALTH )<br>CORPORATION )<br>)<br>DEFENDANTS )<br>)<br>AND RELATED COUNTERCLAIMS ) | DOCKET NO. 15-11470-IT |

**OPPOSITION OF DEFENDANTS INTEGRATED BEHAVIORAL
HEALTH, INC. AND RELIANT BEHAVIORAL HEALTH, LLC TO
PLAINTIFF TRUSTIVO LLC'S REQUEST FOR LEAVE TO SERVE
MORE THAN TWENTY-FIVE INTERROGATORIES**

The action was commenced on March 30, 2015. Counsel for the parties conducted their Fed.R.Civ.P. 26(f) conference on July 13, 2005 and the Scheduling Conference is set for August 5, 2015. Discovery is just beginning. Indeed, other than serving an initial set of discovery requests on the same day that it filed this motion, Plaintiff Trustivo, LLC ("Plaintiff") has not yet conducted any discovery. Yet, despite this early stage of the case, Plaintiff seeks leave to serve on each defendant more than the limit of 25 interrogatories allowed under the Federal Rules of Civil Procedure and the Local Rules. What is more, Plaintiff makes the request without even so

much as attempting to make the requisite particularized showing that exceeding the limit on the number of allowable interrogatories is necessary or citing to any authority that would suggest that its unsupported request comes anywhere close to the good cause standard for such a motion. Plaintiff's request must be denied.

## BACKGROUND

Defendants Integrated Behavioral Health, Inc. ("IBH") and Reliant Behavioral Health, LLC ("RBH") (collectively, "Defendants") are involved in the business of providing Employee Assistance Programs, or "EAPs" to employers and their employees. Generally speaking, an EAP is an employee benefit program offered by an employer for the benefit of its employees, which provides employees with a variety of support programs and services aimed to assist with work-related difficulties as well as managing issues in their personal lives. Examples of issues for which EAPs can provide support include substance abuse, occupational stress, emotional distress, major life events (e.g. birth of a child, accidents, death of a family member), health care concerns, and legal and financial concerns. EAP providers typically contract with a variety of service providers that can address special issues. This is true in the case of IBH and RBH, both of whom contract with various service providers throughout the nation.

EAP benefits are paid for by the employer and the use of EAP services is completely up to each employee. When an employee does decide to use the service they place a call to the EAP program manager who determines, based on the nature of the employee's stated needs or issues, which one of the EAP's contracted service providers could best address such issues and a referral is then made for the employee to contact the specified service provider. Whether any particular service provider in the EAP network gets a referral, and how often, depends on whether an employee requests the type of services that are in the area provided by that particular service provider as well as the EAP's assessment of the issue and which appropriate service

provider to refer.

This litigation arises out of contracts that Plaintiff entered into with both IBH and RBH to become one of the financial consulting service providers in the IBH network and the RBH network. Plaintiff filed this action because it claimed to be dissatisfied with the number of referrals it was getting from IBH and RBH each month. Plaintiff contends that the parties' contracts entitled Plaintiff to not only be the exclusive service provider in the IBH and RBH networks for financial issues. Defendants deny any such exclusivity; indeed, it would be contrary to the business model for them or any EAP provider. Plaintiff also claims that it somehow expected to have each and every one of the millions of employees whose employers contract with Defendants for EAP services to be referred to Plaintiff. Of course, such an expectation is inherently unreasonable given that whether any employee ever contacts the EAP service is completely dependent upon the employee choosing to do so and, even then, whether the employee is seeking financial services of the type provided by Plaintiff and the EAP program manager's assessment of the appropriate referral to make. Incredibly, Plaintiff's complaint underscores its unreasonable position by alleging that, just as it relates to its claim against IBH alone, "the total revenue that would have been earned if [Plaintiff] was introduced to the agreed upon 5.5 million IBH EAP members that IBH had when the contract was executed, would have been $721,875.000, of which [Plaintiff's] share would have been $675,781.250." Complaint [Dkt. No. 1] at ¶ 18.

As the pleadings in this case indicate, the parties have divergent views concerning what they agreed to under the contracts and who has committed material breaches thereof. For their part, both IBH and RBH have filed counterclaims based on Plaintiff's failure to appropriately provide services to the employees who were referred to Plaintiff or to keep its other promises

/ / /

that were used to entice Defendants to agree to make Plaintiff part of its network of service providers.

## PLAINTIFF HAS FAILED TO SHOW GOOD CAUSE TO ENLARGE THE NUMBER OF ALLOWABLE INTERROGATORIES

Federal Rule of Civil Procedure 33(a) provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).  Rule 26(b)(2)[1] states that "[b]y order, the court may alter the limits in these rules on the number of . . . interrogatories."  *See also* Local Rule 26.1(c) (limiting the number of interrogatories to no more than twenty-five unless otherwise ordered.)

To determine whether good cause exists courts consider the factors listed in Rule 26(b)(2)(C) which provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:  (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the action, and the importance of the discovery in resolving the issues."

In this district, a party is required to make a specific showing of necessity when seeking leave of Court for discovery beyond the limitations provided in the rules.  *Whittingham v. Amherst College,* 163 F.R.D. 170, 171 (D. Mass. 1995).  In *Whittingham*, the court denied a plaintiff's request to exceed the limit of ten depositions.  As the court explained, the local rules limiting the number of available discovery and the need for leave of court to exceed them "were

promulgated to enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of 'wide-ranging discovery' and the potential for discovery to be used as an 'instrument for delay or suppression.'" *Id.* at 171-72 (citing to commentary to Rule 26(b)(2)). "Indeed, the Expense and Delay Reduction Plan, adopted by the U.S. District Court for the District of Massachusetts . . . imposed the limitations on the number of depositions, interrogatories and requests for admissions, in order to encourage cost-effective discovery." *Id.*

Numerous other courts have explained that "a party seeking leave to serve more Interrogatories than are contemplated by the Federal Rules must make a particularized showing of why the discovery is necessary." *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 586 (D. Minn. 1999); *see also Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (where plaintiff "presented no good reason why additional depositions were necessary . . . the district court committed no abuse of discretion in denying leave to do so); *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 518 (D. Minn. 1992) (denying leave to serve additional interrogatories where party did not demonstrate necessity by showing the specific content of those interrogatories); *Cappachione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 492 (W.D.N.C. 1998) (denying leave to serve additional interrogatories where party gave no explanation of their subject matter); *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 148 (5th Cir. 1996) (denying request to exceed number of allowed interrogatories where plaintiff "did not explain why additional interrogatories were necessary, beyond stating that the information related to [defendant's] defenses in some unspecified way"). "Frequently, the issue becomes whether the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party." *See Estate of Manship v. United States*, 232 F.R.D. 552, 559 (M.D. La. 2005).

---

[1] All citations are to the Federal Rules of Civil Procedure unless otherwise specified.

In its request for leave to serve a total of 40 interrogatories on IBH and 30 interrogatories on RBH, Plaintiff makes no attempt whatsoever to explain why it is necessary for it to be permitted to exceed the statutory limit of 25.  Plaintiff does not explain that it served 22 interrogatories on IBH and 18 on RBH concurrent with filing its motion, many of which arguably contain subparts that are not logical extensions of the basic interrogatory.  *Cf.* Local Rule 26.1(c) ("For purposes of determining the number of interrogatories propounded, subparts of a basic interrogatory which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory shall not be counted separately from the basic interrogatory.").   Nor does Plaintiff explain why it could not have tailored those interrogatories to obtain the additional information it thinks it needs or how those already-served interrogatories (or the document requests that were served with them) are insufficient for this purpose.  Plaintiff also fails to explain what additional interrogatories it intends to serve if leave is granted or what information it needs.  Indeed, all Plaintiff has done is provide a vague recitation of the claims-at-issue in the pleadings and then cite benignly to a couple of secondary sources that discuss the benefits of interrogatories as a discovery device.

Plaintiff's non-existent showing of any need fails to meet its burden of showing a particularized need.  Nor is it sufficient to apprise the Court or Defendants what the benefits would be of allowing additional discovery beyond the statutory limit.  Moreover, while the use of interrogatories can certainly be beneficial as a discovery tool, as the commentary to the 1993 amendments to Rule 33 make clear, their use also can be excessive.  The commentary explains that "[t]he purpose of this revision is to reduce the frequency and increase the efficiency of interrogatory practice. [. . .] The aim is not prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of the discovery device."

Plaintiff's showing simply provides no information whatsoever to justify the necessity of additional interrogatories. Nor does it provide information that would enable Defendants to respond meaningfully as to why whatever additional interrogatories Plaintiff wants to serve would be cumulative, burdensome or excessive. Rather, Plaintiff leaves Defendants guessing as to what the additional interrogatories would entail and why the benefit of being given leave to propound them outweighs the burden to Defendants or the potential for harassment.

Because Plaintiff has failed to make a particularized showing of necessity – *let alone any showing at all* – Plaintiff's request for leave to serve additional interrogatories must be denied.

An additional, independent ground exists to warrant denial of Plaintiff's motion. Local Rule 7.1(a)(2) requires that no motion may be filed "unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Here, when counsel conferred on July 13 concerning the issues encompassed in the Joint Proposed Scheduling Order all Plaintiff's counsel said about this issue was that Plaintiff wanted to be able to serve more than 25 interrogatories on each Defendant. No explanation for the need to deviate from the limit provided by the rules was provided. Thus, it cannot be said that Plaintiff attempted in good faith to resolve or narrow the issue presented here as required by Local Rule 7.1(a)(2).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Wherefore, Defendants Integrated Behavioral Health, Inc. and Reliant Behavioral Health, LLC respectfully request that Trustivo's motion be denied.

    For INTEGRATED BEHAVIORAL HEALTH, INC. and RELIANT BEHAVIORAL HEALTH LLC

    /s/ J. Christopher Jaczko
    J. Christopher Jaczko (*Pro Hac Vice*)
    Jamie D. Quient (*Pro Hac Vice*)
    PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
    12544 High Bluff Drive, Suite 300
    San Diego, CA 92130
    Tel: 858.720.6300
    chris.jaczko@procopio.com

    Lee T. Gesmer
    Lee T. Gesmer (BBO No. 190260)
    GESMER UPDEGROVE LLP
    40 Broad Street
    Boston MA 02109
    Tel: 617.350.6800
    lee.gesmer@gesmer.com

Dated: July 30, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2015, I electronically filed the foregoing with the Clerk for the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF.

                                                /s/ J. Christopher Jaczko
                                                J. Christopher Jaczko

Dated: July 30, 2015